**Eula BUHL and Merlin Buhl, Sr., Plaintiffs,**

v.

**BIOSEARCH MEDICAL PRODUCTS, INC., Biosearch Medical Products Co., Loma Linda University Medical Center, Dobbhoff, Does 1 through 50, Defendants.**

**No. 83–128–M–CCL.**

United States District Court, D. Montana, Missoula Division.

Dec. 18, 1985.

Randy Cox, Boone, Karlberg & Haddon, Ronald Bender, Worden, Thane & Haines, Missoula, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

This is a personal injury action arising out of injuries allegedly sustained by plaintiff Eula Buhl when, on two separate occasions in 1980, a Dobbhoff enteral feeding tube broke while inside of her stomach. The injuries to Mrs. Buhl are allegedly the result of mercury in her system which leaked from a bolus weight attached to the end of each tube. Plaintiff has sued the manufacturer of the tubes, defendant Biosearch Medical Products, Inc. ("Biosearch"), and the seller, defendant Loma Linda University Medical Center ("Loma Linda"), under a theory of strict products liability. Plaintiff Merlin Buhl, Sr., the husband of plaintiff Eula Buhl, seeks damages for loss of Mrs. Buhl's care, comfort and society. Jurisdiction is based on diversity of citizenship.

Counsel for all parties appeared in open court on the 5th day of December, 1985, for a status conference and hearing on numerous pending motions. Of the fifteen unresolved motions on file, nine involve discovery; the Court was advised that the parties would attempt to resolve their discovery problems without court intervention. The other important motions were argued and will be considered chronologically.

Three motions are directed toward the amendment of the complaint. Plaintiffs filed an application for leave to amend the complaint to add a claim for punitive damages. Both Biosearch and Loma Linda filed a motion to strike the amended complaint and the application therefor as untimely and prejudicial to the defendants.

The incidents which form the basis for this action occurred in August and October of the year 1980. The plaintiffs retained a lawyer some time before August, 1981, and the complaint was filed August 12, 1983. Plaintiffs' motion to amend was not filed

Edward Cummings, Cummings Law Firm, Byron Boggs, Missoula, Mont., for plaintiffs.

until April 16, 1985, 20 months after the filing of the original complaint and over 4½ years after the events in question. The motion alleges that "in the course of discovery facts heretofore unknown to plaintiffs have shown them that defendants' conduct herein warrant [sic] punishment."

Defendants assert that plaintiffs conducted no discovery prior to the filing of the motion to amend which revealed any additional facts relevant to a claim for punitive damages. Defendants further claim that if plaintiffs' motion is granted substantial new issues will be injected into the action and the entire focus of the defense must change, resulting in great prejudice to both defendants.

Under Rule 15(a), Fed.R.Civ.P., leave to amend is to be freely given when justice so requires. The Supreme Court of the United States has held that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1961). Since *Foman,* other courts have held that delay alone cannot defeat a Rule 15(a) motion to amend; rather, opposition to any such motion must focus on any prejudice that would accrue if it were granted. *Bertrand v. Sava,* 535 F.Supp. 1020 (S.D.N.Y.1982), *rev'd on other grounds,* 684 F.2d 204 (2d Cir.). Courts have allowed amendment in spite of delay where the amendment is made before trial, before the close of discovery, and before ruling on pending motions. *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390 (N.D.Ill.1981). On the other hand,

> [w]hile courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party, ... where ... a considera-

ble period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some "valid reason for his neglect and delay."

*Carter v. Supermarkets General Corp.,* 684 F.2d 187 (1st Cir.1981).

■ At the time of oral argument on this motion, plaintiffs' counsel suggested that facts ascertained from the deposition of a key defense expert witness led to the filing of the amended claim for damages. As the defendants pointed out, however, that deposition was taken several months after the motion to amend was filed. This action has been pending well over two years, and plaintiffs have had ample opportunity to conduct discovery. Amendment of the complaint at this juncture would necessitate a great deal of discovery directed toward the willfulness of the defendants' conduct, and would cause further delay in the case as well as prejudice to the defendants. Plaintiffs have shown no legitimate reason for their failure to amend at a much earlier date. Accordingly, plaintiffs' motion to amend the complaint is hereby DENIED.

■ Plaintiffs have filed a motion in limine by which they seek to preclude defendants from calling any expert witnesses not previously disclosed. Pursuant to the order of this Court, the parties each filed a list of witnesses in August, 1985; plaintiffs seek to bar the testimony of any expert whose name does not appear on the defendants' lists. Normally, the parties are bound by their disclosure of witnesses except upon a showing of good cause. Neither defendant has indicated any desire to call a witness other than those named. Accordingly, plaintiffs' motion in limine is DENIED as premature.

On the 7th day of November, 1985, defendant Biosearch filed a motion for partial summary judgment, in which defendant Loma Linda joined, seeking judgment in favor of defendants with respect to any claim arising out of the first incident of mercury leakage from the feeding tube. The basis for this motion is the statement

of Mrs. Buhl during her deposition that the first occasion on which the tube's bolus weight leaked mercury occurred on August 5, 1980, rather than on August 14, 1980, as alleged in the complaint. The complaint having been filed on August 12, 1983, defendants assert that claims arising out of the August 5 incident are barred by the applicable statute of limitations. Any claims based upon the second leakage incident, which occurred in October, 1980, are not affected by this motion.

■ In determining the proper period of limitations to apply to a diversity action in federal court, the federal court must ascertain and apply the statutes of limitation which would be applied by the forum state's courts in a similar action. *Robuck v. Dean Witter and Co., Inc.*, 649 F.2d 641 (9th Cir.1980). The federal court is to be guided by the state's interpretation of its own statutes of limitations. *Clark v. Musick*, 623 F.2d 89 (9th Cir.1980). The applicable statute of limitations in a products liability case is § 27–2–204(1), M.C.A. (1985), which prescribes a three year limitation period for tort actions. *Thompson v. Nebr. Mobile Homes Corp.*, 198 Mont. 461, 647 P.2d 334 (1982).

■ Under Rule 8(c) of both the Federal and Montana Rules of Civil Procedure, a statute of limitations defense must be pleaded affirmatively or it is waived. In this case, the defense was raised by motion after filing of the answer. Implicit in defendants' position is the argument that a reasonably prudent attorney would not have anticipated a statute of limitations defense from the allegations in the complaint. The Ninth Circuit Court of Appeals has held that absent prejudice to the plaintiff, an affirmative defense may be raised by a motion for summary judgment regardless of the failure to plead it in the answer. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984). No prejudice has been claimed by plaintiff here, nor has plaintiff raised the issue of waiver of the defense. Accordingly, the Court finds that defendants' failure to raise the defense of the statute of limitations in their initial pleadings does not preclude them from making a motion for summary judgment based on that defense. *Id*, at 566.

■ Strict application of the three-year limitation period in this case would result in dismissal of plaintiffs' claims regarding the first incident in question. Plaintiffs argue, however, that Mrs. Buhl's cause of action against defendants did not accrue until she discovered that the mercury within her body was the cause of her injuries.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R.Civ.P. The material facts as to this issue are not in dispute. On August 5, 1980, Mrs. Buhl vomited the Dobbhoff feeding tube and noticed that the bolus weight was empty. She immediately telephoned her local doctor, who advised her that any problems with the feeding tubes were to be handled through Loma Linda University. Mrs. Buhl then telephoned Loma Linda and was told that any mercury that had leaked into her body would likely pass through without harm. When her discomfort did not pass, Mrs. Buhl sought further medical treatment and on August 27, 1980, viewed the results of an x-ray which showed traces of mercury inside her body.

Plaintiffs take the position that Mrs. Buhl's claim against the defendants did not arise until August 27, 1980, when she saw that in fact the mercury had not passed through her and knew at that point it was the cause of her troubles. Defendants, on the other hand, contend that Mrs. Buhl's cause of action accrued on August 5, 1980, at the moment she became ill and saw the empty bolus weight at the end of the tube.

Applying Montana law, this Court has held that "accrual occurs upon injury in tort actions." *Much v. Sturm, Ruger & Co*, 502 F.Supp. 743, 744 (D.Mont.1980), aff'd 685 F.2d 444. Limited exceptions to this rule have been fashioned by statute and by case law in the areas of fraud, mistake, latent injury, and medical and legal malpractice. One exception, now codi-

fied in §§ 27–2–203; 205 and –206, M.C.A. (1985), is known as the "discovery doctrine," under which the plaintiff's cause of action does not accrue until the plaintiff discovers or by the exercise of reasonable diligence should have discovered the alleged wrongdoing. *Johnson v. St. Patrick's Hospital,* 148 Mont. 125, 417 P.2d 469 (1966). The Supreme Court of Montana has applied the discovery doctrine to toll the running of the statute of limitations in cases where, either because of the nature of the injury or because of the relationship between the parties, it is virtually impossible for the plaintiff to know that he has a cause of action. *Johnson, supra; Keneco v. Cantrell,* 174 Mont. 130, 568 P.2d 1225 (1977).

Inextricably related to the discovery doctrine is the judicially-created theory of fraudulent concealment, first applied in *Johnson v. St. Patrick's Hospital, supra.,* which serves to toll the statute of limitations during the period in which by some act of the defendant the plaintiff's cause of action is concealed from him. The Supreme Court of Montana has held that "[t]o toll the statute of limitations the fraud must be of such a character as to prevent inquiry, elude investigation, or to mislead the party who claims the cause of action." *Monroe v. Harper,* 164 Mont. 23, 518 P.2d 788 (1974). For plaintiffs to claim fraudulent concealment, " '[t]here must be some affirmative act of the defendant calculated to obscure the existence of a cause of action.' " *Much v. Sturm, Ruger & Co., supra.,* 502 F.Supp. at 745.

*Much* was a products liability action in which the plaintiff's gun accidentally discharged and shot him in the leg. Suit was filed some four years after the accident. Plaintiff claimed the statute was tolled by the defendant's fraudulent concealment of the defective nature of the product, of which defect plaintiff did not learn until years later. This Court, the Hon. W.D. Murray, held that the doctrine of fraudulent concealment was inapplicable. Citing *Monroe v. Harper, supra.,* the court stated that "the cause of action [must] be fraudulently concealed by a failure to disclose the

fact of injury. The fact of injury was obvious to Mr. Much at the instant his revolver discharged into his leg." *Much, supra.,* 502 F.Supp. at 745.

The court further held that the discovery doctrine would not be applied to products liability cases, stating that it has been "limited to latent injuries resulting primarily from either drug products or medical malpractice." *Id.* The court noted that Montana statutes authorize application of the discovery rule in actions for fraud or mistake and for malpractice, but *not* for tort actions. Moreover, "the Montana Supreme Court has not applied a discovery rule outside the realms of fraud/mistake and latent injuries/malpractice." *Id.* The court concluded:

> To allow a plaintiff, who fails to inquire into the cause of injury, to avoid the time bar under the guise of 'discovery' would hopelessly demolish the protection afforded defendants by the statute.

*Id.,* at 745.

The same analysis is applicable in this case. There can be no question that when Mrs. Buhl discovered the empty tube she was put on inquiry that there was something wrong. The mere fact that she was told that it probably was not the mercury is insignificant, for there is no allegation of fraud by plaintiffs nor is there any evidence that Mrs. Buhl was advised not to seek other medical advice or that either defendant attempted to affirmatively conceal the fact of injury from her. *See, Carlson v. Ray Geophysical Division,* 156 Mont. 450, 481 P.2d 327, 329 (1972).

Even if Mrs. Buhl did not believe that she had a right to bring an action against these defendants, it has long been the law in Montana that a plaintiff cannot "rely on the claim that he had no knowledge of his right to sue, for 'the fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not, as a general rule, prevent the running of the statute, or postpone the commencement of the period of limitation, until he discovers the facts

or learns of his right thereunder.' " *Carlson, supra.*, 481 P.2d at 329, *citing, Kerrigan v. O'Meara*, 71 Mont. 1, 8, 227 P. 819 (1924). Indeed, were this court to adopt the rule urged by plaintiffs, the issue of when the cause of action accrued would not be resolved until the jury returned its verdict with the answer to the ultimate issue of causation of Mrs. Buhl's injuries. Clearly, this is not the intent of the statutes of limitation. As recently stated by the Montana Supreme Court:

> The law does not contemplate such discovery as would give positive knowledge of the [wrongdoing], but such discovery as would lead a prudent man to inquiry or action. To hold that discovery must amount to absolute knowledge of the fact of [wrongdoing] would be to render the statute practically inoperative, since such knowledge is rarely had before the facts are established by adjudication.

*Mobley v. Hall*, 202 Mont. 227, 657 P.2d 604, 607 (1983).

Plaintiffs further assert that Mrs. Buhl's injuries were of a continuing nature and thus that the statute of limitation "only serves to cut off the more remote injuries." Plaintiffs' reliance on *Haugen Trust v. Warner*, — Mont. —, 665 P.2d 1132 (1983), is misplaced. Each case in which this theory of continuous injury has been applied involved injury to real property by conditions such as yearly flooding. *Id.; Blasdel v. Montana Power Co.*, 196 Mont. 417, 640 P.2d 889 (1982); *Walton v. City of Bozeman*, 179 Mont. 351, 588 P.2d 518 (1978). Continuous injury has not been considered in personal injury actions. Certainly, there often will be continuous effects of an invasion of the body by foreign material such as mercury or a surgical sponge, but continuous effects are entirely different from continuous injuries.

Finally, plaintiffs insist that defendants are estopped from raising the statute of limitations because of their conduct in assuring Mrs. Buhl that the mercury was not the source of her injuries. Plaintiffs cite *Keneco v. Cantrell, supra*, in support of this position. *Keneco* is inapposite to this case, however, because there is no confidential relationship between the parties as there was in that case, and no evidence that Mrs. Buhl was "lulled into a sense of security that 'everything would get straightened out.' " *Keneco*, 568 P.2d at 1228. Furthermore, plaintiffs have made no attempt to prove any of the elements of estoppel, but merely rest on their bare assertion. Absent a showing of conduct warranting estoppel, there can be no such finding. In short, plaintiffs have shown no valid exception to or tolling of the three-year period of limitations. The information Mrs. Buhl provided during her deposition was derived from her own medical bills; as such, that information was available to her attorneys long before the commencement of this action. The period of limitation having expired prior to the commencement of the action, it is hereby ORDERED that partial summary judgment shall be entered in favor of both defendants, dismissing all claims of the plaintiffs arising out of the August 5, 1980, incident.

Plaintiffs have also filed a request for hearing on all pending motions, trial setting, and further scheduling. Hearing and status conference already having been held, this motion is DENIED as moot.

In summary, IT IS HEREBY ORDERED:

1. Counsel for all parties shall meet and confer on all pending discovery motions. Any such motions that cannot be resolved may be brought to the court's attention by January 7, 1986.

2. Plaintiffs' motion for leave to file an amended complaint is DENIED.

3. Plaintiffs' motion in limine is DENIED without prejudice to refile if the issue arises.

4. Defendants' motions for partial summary judgment as to all claims arising out of the leakage of mercury from the Dobbhoff tube on August 5, 1980, are GRANTED.

5. Plaintiffs' request for hearing, trial setting, and further scheduling is DENIED as moot.